IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

DALE W. SHEELER, *individually and on behalf* )
*of all others similarly situated,* )
2208 Willoughby Beach Road )
Edgewood, MD 21040 )
)
)
Plaintiff, )
)
v. ) Case No.:_____
)
WILMINGTON TRUST, FSB, *a federal savings bank*)
Harborplace Tower, Suite 2620 )
111 South Calvert Street )
Baltimore, MD 21202-6120 )
)
)
Serve on: )
Authorized Agent for Service ) JURY TRIAL
)
Defendant. )
_____)

CV File New        $88.00
Appear Fee         $20.00
MLSC               $55.00
TOTAL             $155.00

CURRENT:
DALE W. SHEELER VS
WILMINGTON TRUST FSB
Receipt #
Cashier: DB CLUC02
06/09/11  11:26am

## CLASS ACTION COMPLAINT

Plaintiff, Dale W. Sheeler, an individual ("Mr. Sheeler"), on his own behalf and on behalf

of all others similarly situated, by and through his undersigned attorneys,

Wilmington Trust, FSB, a federal savings bank ("Wilmington Trust"), and states:

## INTRODUCTION

1.     This class action seeks monetary and injunctive relief to redress an unlawful and

deceptive pattern of wrongdoing followed by Wilmington Trust with respect to the repossession

and repossession sale of vehicles.

2.     As more particularly described below, Wilmington Trust has failed to provide Mr.

Sheeler and other Maryland consumers with a pre-repossession notice, referred to as a

1


EXHIBIT

1-A

"discretionary notice", which informs consumers such as Mr. Sheeler of the intent of Wilmington Trust to repossess a vehicle as required by Md. Code Ann., Comm. Law § 12-1001, *et sequi*, known more commonly as the "Credit Grantor Closed End Credit Provisions" ("CLEC").

3.   As more particularly described below, subsequent to the repossession of vehicles, Wilmington Trust has failed to provide Mr. Sheeler and other Maryland consumers with statutorily mandated post-repossession notices which provided important information to consumers such as Mr. Sheeler of the rights of the consumers to redeem their vehicles and their obligation to pay a deficiency as required by § 12-1021(c)(1), (j)(1) and (j)(2) of CLEC.

4.   Notwithstanding the failure of Wilmington Trust to comply with the requirements of CLEC, Wilmington Trust nonetheless attempted to recover repossession deficiencies and expenses not authorized by CLEC. Accordingly, pursuant to § 12-1021(k)(4) of CLEC, Wilmington Trust is not entitled to collect a deficiency from Mr. Sheeler or any other class member.

5.   Mr. Sheeler brings this action on behalf of himself and all other similarly situated consumers seeking statutory damages and equitable relief as provided for under Maryland law.

### ALLEGATIONS AS TO PARTIES

6.   At all times material hereto, Mr. Sheeler was *sui juris* and a resident of Edgewood, Harford County, Maryland.

7.   At all times material hereto, Wilmington Trust is a federal savings bank doing business at 111 South Calvert Street, Baltimore, Maryland 21202.

8.   At all times material hereto, Wilmington Trust was engaged in the business of providing financing to purchasers of new and used automobiles in the State of Maryland.

2

## ALLEGATIONS OF FACT

### A.   *Details Concerning Repossession*

9.    On or about July 11, 2009, Mr. Sheeler entered into a written finance agreement entitled "Retail Installment Sale Contract - Simple Finance Charge" ("Sheeler Finance Agreement").

10.    A true and correct copy of the Sheeler Finance Agreement is attached hereto and incorporated herein by reference as Exhibit A.

11.    Pursuant to the Sheeler Finance Agreement, Mr. Sheeler financed the purchase of a new 2009 Ford Fusion automobile, VIN: 3FAHP07199R114627 ("Sheeler Vehicle")..

12.    On or about September 14, 2010, Wilmington Trust repossessed the Sheeler Vehicle as a result of a purported default under same.

13.    On or about September 16, 2010, Wilmington Trust sent or caused to be sent to Mr. Sheeler a certified letter ("Sheeler Reinstatement/Redemption Notice") in purported compliance with the requirements of CLEC.

14.    A true and correct copy of the Sheeler Reinstatement/Redemption Notice together with the envelope containing same is attached hereto and incorporated by reference as Composite Exhibit B.

15.    Pursuant to the Sheeler Reinstatement/Redemption Notice, Wilmington Trust informed Mr. Sheeler of the following:

> We have not received a payment from you since September 9, 2010 and your account is still past due for September 10, 2010. As of the date of this letter, you are in default for payments totaling $421.03. In addition, you must pay $250.00 representing the actual and reasonable costs of repossession plus $30.00 per day for the costs of storing your vehicle from September 14, 2010 until the day it is

redeemed.   The total amount required to redeem and retake possession of your vehicle is $671.03 plus storage fees.

("Reinstatement/Redemption Disclosure")

16.     Pursuant to the Reinstatement/Redemption Disclosure contained in the Sheeler Reinstatement/Redemption Notice, Wilmington Trust claimed the right to recover the sum of Two Hundred Fifty ($250.00) Dollars as "reasonable costs of repossession."

17.     On or about October 1, 2010, Wilmington Trust sent or caused to be sent to Mr. Sheeler a document entitled "Notice of Our Plan to Sell Property" ("Sheeler Notice of Sale") in purported compliance with the requirements of CLEC.

18.     A true and correct copy of the Sheeler Notice of Sale together with the envelope containing same is attached hereto and incorporated by reference as Exhibit C.

19.     On or about December 6, 2010, Wilmington Trust sent or caused to be sent to Mr. Sheeler a document entitled "Notice of Deficiency" ("Sheeler Notice of Deficiency") in purported compliance with the requirements of CLEC.

20.     A true and correct copy of the Sheeler Notice of Deficiency is attached hereto and incorporated by reference as Exhibit D.

21.     Pursuant to the Sheeler Notice of Deficiency, Wilmington Trust claimed the right to recover the sum of Four Hundred Sixty-Eight Dollars ($468.00) in repossession expenses.

22.     Wilmington Trust failed to provide to Mr. Sheeler any notice with respect to its intent to repossess the Sheeler Vehicle prior to repossession.

4

**B.**   **_Description of Credit Grantor Closed End Credit Provision Act Non-Compliance_**

23.   Paragraph 6 of the Sheeler Finance Agreement provides: "6. Applicable Law. Federal law and Maryland law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code."

24.   Section 12-1021(c)(1) of CLEC provides in pertinent part the following:

        (c)(1). At least ten days before a credit grantor repossesses any tangible personal property, the credit grantor may serve a written notice on the consumer borrower of the intention to repossess the tangible personal property.

        (2)   The notice shall:

           (i) State the default and any period at the end of which the tangible personal property will be repossessed; and

           (ii) Briefly state the rights of the consumer borrower in case the tangible personal property is repossessed.

25.   Section 12-1201(j)(1)(ii) of CLEC provides in pertinent part that "At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address."

26.   The Sheeler Notice of Sale fails to comply with the requirements of CLEC § 12-1201(j)(1)(i) in the following respects:

        A.   Failure to Provide Adequate Notice - The Sheeler Notice of Sale provided only six (6) days notice of the date after which the private sale of the Sheeler Vehicle would occur as opposed to ten (10) days in contravention of CLEC, §

12-1201(j)(1)(ii); and

B. **Failure to State the Time and Place of Sale** - The Sheeler Notice of Sale did

not notify Mr. Sheeler of the time and place of the sale as required by CLEC, §

12-1201(j)(1)(ii).

27. Section 12-1201(j)(2) of CLEC provides in pertinent part:

(2) In all cases of a private sale of repossessed goods under this section, a full accounting shall be made to the borrower in writing and the seller shall retain a copy of this accounting for at least 24 months. This accounting shall contain the following information:

(i) The unpaid balance at the time the goods were repossessed;

(ii) The refund credit of unearned finance charges and insurance premiums, if any;

(iii) The remaining net balance;

(iv) The proceeds of the sale of the goods;

(v) The remaining deficiency balance, if any, or the amount due the buyer;

(vi) All expenses incurred as a result of the sale;

(vii) The purchaser's name, address, and business address;

(viii) The number of bids sought and received; and

(ix) Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.

28. The Sheeler Notice of Deficiency fails to comply with the requirements of CLEC, § 12-1201(j)(2) in the following respects:

A. **Failure to Disclose Refund Credit of Unearned Finance Charges and Insurance**

<u>Premiums</u> - Wilmington Trust failed to state whether Mr. Sheeler received a refund credit of unearned finance charges and insurance premiums, if any, as required under CLEC, § 12-1201(j)(2)(2ii);

B. <u>Failure to Disclose Expenses Incurred as a Result of the Sale</u> - Wilmington Trust failed to identify the expenses incurred as a result of the sale of the Sheeler Vehicle as required under CLEC, § 12-1021(j)(2)(vi);

C. <u>Failure to Provide Information Concerning Purchaser</u> - Wilmington Trust failed to provide the purchaser's name, address and business address as required under CLEC, § 12-1201(j)(2)(vii); and

D. <u>Failure to Provide Information Concerning Bids</u> - Wilmington Trust failed to state the number of bids sought and received as required under CLEC, § 12-1021(j)(2)(viii).

29.    Absent strict compliance with the statutorily required notices regarding repossession, including pre-sale and post-sale notices, a Maryland credit grantor may not lawfully assess or collect any deficiency from consumer borrowers, or any other person liable under the contract following disposition of the repossessed property.  In particular, CLEC specifically provides "if the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." CLEC, § 12-1021(k)(4).

30.    In addition, absent strict compliance with the statutorily required pre-sale and post-sale notices regarding repossession, a credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees or other charges with respect to the loan."

7

CLEC, § 12-1018(a)(2). A credit grantor who knowingly violates any provision of CLEC is liable for statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC. CLEC, § 12-1018(b).

31. . Wilmington Trust has frustrated the right of Mr. Sheeler and other class members to retain their vehicle by charging for repossession and by providing non-compliant notices in the form of or substantially similar form as the Sheeler Reinstatement/Redemption Notice and Sheeler Notice of Sale. Further, as Wilmington Trust did not provide the discretionary notice prior to repossession, Wilmington Trust is not entitled to charge for repossession costs. CLEC § 12-1021(h)(3).

32. . The failure of Wilmington Trust to provide a discretionary notice under § 12-.1021(c)(1) prior to repossession and the post-repossession notices in the manner as mandated by CLEC deprived Mr. Sheeler and the class members of the information and benefits to which they were entitled by law. The disclosures mandated by CLEC are intended to help inform borrowers such as the Class Representative and the members of the Class to protect their interests in their vehicles and to hold credit grantors and their agents such as Wilmington Trust accountable for selling the vehicles as prescribed by law.

33. Upon information and belief, the Class Representative avers that notwithstanding the failure of Wilmington Trust to comply with the mandatory pre-sale and post-sale notice requirements of the CLEC, Wilmington Trust knowingly assessed, demanded and attempted to collect or has collected alleged deficiency balances from members of the Class for which the members of the Class are not liable as a matter of law. Wilmington Trust has made unlawful collection demands to the Class Representative and members of the Class and falsely represented

8

to those borrowers that deficiency balances were owed, and collected money from borrowers to which Wilmington Trust was not entitled.

34.     As detailed more fully above, at all times relevant hereto, Wilmington Trust had actual knowledge that the Class Representative and members of the Class were not liable for any deficiency as a result of the failure of Wilmington Trust to comply with CLEC, but nevertheless persisted in its unlawful collection activities.  Unless and until this Court grants declaratory and injunctive relief, Wilmington Trust will continue to engage in business practices which violate CLEC and which will result in deficiency judgments to which Wilmington Trust is not entitled.

## CLASS REPRESENTATION ALLEGATIONS

## STATEMENT OF MAINTAINABLE CLASS CLAIMS

35.     Pursuant to Md. Rule 2-231, this is a case maintainable on a class-wide basis pursuant to Md. Rule 2-231(b)(2) and (3), and the Class Representative brings this action on behalf of himself and a class of all other persons similarly situated, to remedy the ongoing unfair, unlawful and/or deceptive practices alleged herein, and seeks redress on behalf of all those persons who have been harmed thereby.

## IDENTIFICATION OF COMMON QUESTIONS OF LAW OR FACT

36.     Pursuant to Md. Rule 2-231(a)(2), there are questions of law and fact common to the Class, which common issues predominate over any issues involving owing individual class members.

37.     The factual question common to the Class Representative and to each class member is that each was sent form letters which failed to comply with CLEC law, and has been subjected or may be subjected to illegal repossession procedures as described above.

9

38.     Pursuant to Md. Rule 2-231(a)(2), the principal legal question common to the Class Representative and to each class member is whether the forms represented by Exhibits B through D complied with Maryland law.

## ALLEGATIONS OF TYPICALITY

39.     Pursuant to Md. Rule 2-231(a)(3), the Class Representative's clams are typical of those of the classes they seek to represent in that the Class Representative was sent form notices that violated Maryland law as described above.  As such, the claims of the Class Representative are identical to that of the class members.

## ALLEGATIONS OF NUMEROSITY

40.     In the auto finance industry in Maryland, similar finance companies experience a default rate of 3% to 5% of their portfolios.  *See, generally*, S. Agarwal and B. Ambrose, Household Credit Usage (2007).  Based on the best due diligence and the experience of Class Counsel, the Class Representative believes that Wilmington Trust repossessed at least a hundred vehicles in a fiscal year.

41.     Based on the foregoing, the prospective class members are at least in the hundreds or thousands and are so numerous that joinder of all members would be impractical.  The exact size of the proposed classes and identity of the members thereof are readily ascertainable from Wilmington Trust's business records.

## DEFINITION OF CLASS

42.     Pursuant to Md. Rule 2-231, the class is composed of all Maryland residents, who in the three (3) years preceding the filing of the instant action:

(a)     have or had a finance agreement ("Finance Agreement") held by

Wilmington Trust which was subject to CLEC;

(b)    had their Vehicle repossessed by Wilmington Trust or its agents; and

(c)    did not receive statutorily mandated pre-repossession and/or post-repossession notices under CLEC.

## ADEQUACY OF CLASS REPRESENTATIVE

43.    Pursuant to Md. Rule 2-231(a)(4), the Class Representative will fairly and adequately protect and represent the interest of each class member.  The Class Representative has retained counsel with substantial experience in handling class actions in federal and state courts.

44.    The Class Representative has no conflicts of interest which would interfere with his ability to represent the interest of the class members.

## APPROPRIATENESS OF CLASS TREATMENT UNDER RULE 2-231(b)(2) and (3)

45.    A class action is superior to other methods for fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually.  The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to the individual class members against Wilmington Trust.

46.    The Class Representative is represented by counsel competent and experienced in both consumer protection and class action litigation.

47.    Members of the proposed class who have an interest in individually controlling the prosecution of separate claims against Wilmington Trust will not be prejudiced by this action.

11

Each member of the proposed classes will be identified through discovery from Wilmington Trust and will be notified and given an opportunity to opt out of their respective class(es).

48.   The Class Representative does not presently know the nature and extent of any pending litigation to which a member of the proposed classes is a party and in which any question of law or fact controverted in the present action is to be adjudicated. The Class Representative will identify any such pending litigation by discovery from Wilmington Trust.

49.   This Court is an appropriate forum for the present action in that the Class Representative is, and at all times herein mentioned has been, a resident of this county; the Class Representative's vehicle was purchased and repossessed in this county; and Wilmington Trust does business in this county, including without limitation providing to residents of this county financing of vehicles that are consumer goods.

50.   Certification of a class under Md. Rule 2-231(b)(2) is appropriate as the questions of law or fact common to the members of the class predominate over any questions affecting an individual class member; and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

51.   The Class Representative requests certification of a class for monetary damages under Md. Rule 2-231(b)(3) and for equitable relief under Md. Rule 2-231(b)(3).

52.   There are no difficulties likely to be encountered by the Court in the management of this proposed class action.

53.   The Class Representative's counsel is entitled to a reasonable fee from the class members or from a common fund for the handling of this action.

12

## CAUSES OF ACTION

## COUNT I - ACTION FOR VIOLATION OF
## § 12-1021, CREDIT GRANTOR CLOSED END CREDIT PROVISIONS ACT

54.     The Class Representative realleges and reaffirms the allegations contained in all paragraphs above as if set forth hereat in full.

55.     Wilmington Trust frustrated the Class Representative's rights and the class members' rights to keep their vehicle by failing to provide the statutorily mandated pre-repossession and post-repossession notices.

56.     As a direct and proximate result of the acts hereinabove alleged, and Wilmington Trust's unlawful conduct, the Class Representative and class members have been damaged and have suffered economic losses in an amount to be proven at trial.

57.     The Class Representative and class members are therefore entitled to damages as well as injunctive relief.

## COUNT II - BREACH OF CONTRACT

58.     The Class Representative realleges and reaffirms the allegations contained in all paragraphs above as if set forth hereat in full.

59.     CLEC was in effect at the time the credit contracts of the Class Representative and all members of the Class were signed by them.  The provisions of the CLEC statute become a part of the contract just as if the parties expressly included the CLEC provisions in their credit contracts.  In addition, the contract explicitly referred to and incorporated CLEC.

60.     When Wilmington Trust violated CLEC as set forth above, it materially breached its contract with the Class Representative and the members of the Class.

13

61.     As a result of Wilmington Trust's breaches of contract with the Class Representative and members of the Class, the Class Representative and members of the class have been damaged.  The Class Representative and members of the class have been deprived of the substantial rights granted to them by CLEC, including: (i) the information needed to determine whether to redeem or reinstate, to-wit: the actual amount which Wilmington Trust could legally claim for redemption/ reinstatement; (ii) the information needed to determine whether the sale of the vehicle was commercially reasonable; and (iii) the information needed to defend against any suit for a deficiency judgment.

62.     In addition, the Class Representative and the Class sustained financial damages as a result of Wilmington Trust's failure to return all of the interest, costs fees and other charges collected on their loans, and the Class Representative and the class sustained other damages and losses.

**COUNT III - DECLARATORY AND INJUNCTIVE RELIEF UNDER MD. CODE ANN., CTS. & JUD. PROC. § 3-406**

63.     The Class Representative realleges and reaffirms the allegations contained in all paragraphs above as if set forth hereat in full.

64.     This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Proc. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Class Representative and members of the class and the consumer protections embodied in Maryland's Credit Grantor Closed End Credit Provisions.

14

65.     Wilmington Trust maintains that it may collect a deficiency balance from the Class Representative and members of the Class even though Wilmington Trust failed to provide the Class Representative and members of the Class with the notices required by Maryland's Credit Grantor Closed End Credit Provisions.

66.     The Class Representative and members of the Class have received or will receive collection notices from Wilmington Trust and/or debt collectors demanding payment of the alleged deficiency balances, and have been sued or will be sued for collection of the sums which Wilmington Trust claims re due.  Moreover, Wilmington Trust also notifies credit reporting agencies (including Equifax, Trans Union and Experian) of the alleged balance due, thereby damaging the credit scores and history of the Class Representative and the Class.

67.     These practices continue and will continue unless and until this Court declares and affirms that Wilmington Trust may not collect any alleged deficiency balance unless Wilmington Trust has complied with the requirements of Maryland's Credit Grantor Closed End Credit Provisions.

68.     Based on information and belief, this presents an actual, judicable controversy between the parties relating to the construction of the credit contract of the Class Representative and members of the Class and the application of Maryland's Credit Grantor Closed End Credit Provisions to those contracts because Wilmington Trust has sought or will seek to collect on the alleged deficiency balances, including through filing collection actions in court, and Wilmington Trust continues to harm the Class Representative and members of the Class by reporting false and derogatory information to credit reporting agencies regarding the accounts in question.

69.     The Class Representative and members of the class have a right to be free from

15

Wilmington Trust's attempts to collect deficiency balances, interest, fees, costs and other charges which are not collectible as a matter of law.

70.     The benefits to the Class Representative and members of the Class in obtaining an injunction outweigh an potential harm Wilmington Trust would incur as a result of an injunction, under the balance of convenience test, as Wilmington Trust has no legal or contractual right to collect deficiency balances from the Class Representative and members of the Class, and the Class Representative and members of the Class would greatly benefit from being relieved of Wilmington Trust's attempts to collect these illegal charges.

71.     The Class Representative and members of the Class will suffer irreparable injury unless the requested injunctions are granted, as Wilmington Trust will continue to collect, and will collect deficiency balances, interest, costs, fees and other charges from them in violation of the law, and Wilmington Trust will report erroneous and derogatory information to the credit reporting agencies regarding the Class Representative based on the illegally imposed charges.

72.     The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Wilmington Trust from violating the statutory and common law of the State of Maryland in its repossession and/or collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

73.     The Class Representative and other members of the Class are likely to succeed on the merits of this action, as CLEC explicitly requires that Wilmington Trust send specific and mandatory pre-sale, post-sale and/or other notices containing information mandated by CLEC that comply with the statute to the Class Representative and members of the Class.  Wilmington Trust did not send such timely and accurate notices.

## COUNT IV - RESTITUTION AND UNJUST ENRICHMENT

74.     The Class Representative realleges and reaffirms the allegations contained in all paragraphs above as if set forth hereat in full.

75.     By paying money on deficiency balances, interest, fees, costs and other charges claimed by Wilmington Trust, the Class Representative and members of the Class conferred a benefit of these illegally collected charges upon Defendant.

76.     Defendant accepted the benefits conferred upon them by the Class Representative and members of the Class when they accepted the money paid toward illegally assessed deficiency balances, interest, costs, fees and other charges.  Further, Defendant was aware of, and had knowledge of, the benefits conferred on it, as it demanded these benefits.

77.     Defendant's collection, acceptance and retention of these charges, when Defendant was not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and Defendant has not refunded the charges to the Class Representative and members of the Class.  Defendant should not be permitted to retain the benefits of those illegal charges.  Defendant's continued withholding of the illegal charges is improper.

78.     The Class Representative and members of the Class conferred these unjust benefits upon Defendant after and as a result of Defendant's misconduct as set forth herein.

## COUNT V - MARYLAND CONSUMER PROTECTION ACT

79.     The Class Representative realleges and reaffirms the allegations contained in all paragraphs above as if set forth hereat in full.

80.     Maryland's Consumer Protection Act ("CPA"), Md. Code. Ann., Comm. Law § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices,

17

*inter alia*, in the extension of consumer credit and in the collection of consumer debts. CPA, §
13-303(3) and (4).

81.     As a "person" under the CPA, § 13-101(h), Defendant is prohibited from
engaging in unfair and deceptive trade practices. CPA, § 13-301.

82.     The CPA specifically prohibits Defendant from making any false or misleading
oral or written statement or other representation of any kind which has the capacity, tendency or
effect of misleading consumers. CPA, § 13-301(1).

83.     The CPA further prohibits Defendant from failing to state a material fact if the
failure deceives or tends to deceive. CPA, § 13-301(3).

84.     In violation of the CPA, § 13-303(3)-(4) and 13-301(3), Wilmington Trust
notified the Class Representative and members of the Class in writing that they owed deficiency
balances which, in fact, the Class Representative did not owe and which Wilmington Trust could
not collect due to its failure to comply with CLEC.

85.     This written statement was false and misleading and tended to and did deceive the
Class Representative and members of the Class, many of whom made payments to Defendant
which was not due and owing.

86.     This failure to disclose material facts led the Class Representative or members of
the Class to make payments which were not due, and which they would not have made had
Wilmington Trust informed them of the material facts. Defendant committed unfair and
deceptive practices by collecting and attempting to collect on alleged debts which, in fact, were
not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA,
§ 13-101 *et seq.*, including §§ 13-303(3)-(4) and 13-301(1) and (3).

87.     As a result of Defendant's unfair and deceptive trade practices in violation of the

CPA, the Class Representative and members of the Class were induced to make payments to

Defendant on deficiency balances, causing the Class Representative or members of the Class

injury and loss.

88.     Based on information and belief, in violation of the CPA, §§ 13-303(3)-(4) and

13-303(1), and as part of an effort to compel the Class Representative and members of the Class

to make payments which were not due, Defendant made false and misleading reports to credit

reporting agencies regarding the amounts which the Class Representative and members of the

Class owed on their accounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dale W. Sheeler, an individual, prays for relief on behalf of

himself and all others similarly situated:

A.      For an Order certifying the instant matter as a class action;

B.      For an Order preliminarily and permanently enjoining Wilmington Trust from

engaging in the practices alleged herein;

C.      For an Order of mandatory injunction directed to Wilmington Trust to remove any

adverse credit information which may have been wrongfully reported on the consumer reports of

the class members;

D.      For a declaratory judgment establishing that Wilmington Trust may not collect

any claimed deficiency balance, or any interest, fees, costs or other charges on a loan account of

the Class Representative or members of the Class;

E.      For statutory damages under CLEC, § 12-1018(a)(2) of all sums paid as interest,

19

costs, fees, or other charges on each account;

F.   For statutory damages in an amount three times the interest, costs, fees and other charges which Wilmington Trust collected in excess of that allowed by CLEC, § 12-1018(b);

G.   For an Order for pre-judgment and post-judgment interest to the extent permitted by law;

H.   For an award of attorney's fees, costs and expenses incurred in the investigation, filing and prosecution of this action to the extent permitted by law; and

I.   For all remedies available to them under Maryland law including punitive damages, and all other relief this Court or a jury deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Dale W. Sheeler, an individual, pursuant to Md. Rule 2-325, demands a trial by jury of all issues so triable.

JANE SANTONI, ESQUIRE
Williams & Santoni LLP
401 Washington Avenue, Ste. 200
Towson, Maryland 21204
(410) 938-8666 Telephone
(410) 938-8668 Telecopier
jane@williams-santonilaw.com
Counsel for Plaintiff

ROBERT W. MURPHY
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
rphyu@aol.com
Co-Counsel for Plaintiff
*to be admitted pro hac vice*

20